## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

July 30, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:     *Stephanie S. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
        Civil No. 24-1465-CDA

Dear Counsel:

On May 20, 2024, Plaintiff Stephanie S. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8) and the parties' briefs (ECFs 12, 13, 15). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

### I.      PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on January 21, 2021, alleging a disability onset of March 9, 2020. Tr. 244-47. Plaintiff's claims were denied initially and on reconsideration. Tr. 73-74, 113-14, 118-34. On May 10, 2023, an Administrative Law Judge ("ALJ") held a hearing. Tr. 41-72. Following the hearing, on August 8, 2023, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 16-38. The Appeals Council denied Plaintiff's request for review, Tr. 3-8, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

### II.     THE ALJ'S DECISION

The Social Security Act defines disability as the "inability to engage in any substantial

---

[1] Plaintiff filed this case against Martin O'Malley, the Commissioner of Social Security on May 20, 2024. ECF 1. Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

*Stephanie S. v. Bisignano*
Civil No. 24-1465-CDA
July 30, 2025
Page 2

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since March 9, 2020, the alleged onset date." Tr. 22. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "disorders of the spine, lumbar radiculopathy, osteoarthritis and allied disorders, carpal tunnel syndrome and Chronic Pain Syndrome (CPS)." *Id.* The ALJ also determined that Plaintiff suffered from the non-severe impairments of stable asthma, GERD without esophagitis, vitamin D deficiency, dyslipidemia, and anxiety. Tr. 22-24. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 24. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except the claimant cannot kneel, crawl, and climb ladders, ropes, and scaffolds. The claimant is limited to performing other postural movements on an occasional basis. The claimant is limited to simple, routine, and low stress tasks with low stress defined as requiring no more than occasional changes in the routine and work that allows her to avoid fast-paced tasks such as assembly line jobs involving production quotas. The claimant is limited to frequent fingering, grasping, handling and reaching. The claimant cannot work around hazards such as moving dangerous machinery and unprotected heights.

Tr. 25. The ALJ determined that Plaintiff was unable to perform past relevant work as a cashier (DOT[3] #211.462-010) but could perform other jobs that existed in significant numbers in the national economy. Tr. 31. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 32.

---

[3] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles . . .* , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Stephanie S. v. Bisignano*
Civil No. 24-1465-CDA
July 30, 2025
Page 3

### III.    LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.    ANALYSIS

Plaintiff raises one argument on appeal: that the ALJ failed to properly conduct a function-by-function assessment of Plaintiff's ability to perform the sitting requirements of sedentary work. ECF 12, at 7-14; ECF 15, at 2-5. Defendant counters that substantial evidence supports the ALJ's RFC assessment, and that the ALJ properly considered Plaintiff's ability to sit.   ECF 13, at 8-19.

The Court finds that, although they did not assess Plaintiff's exertional capabilities on a function-by-function basis, the ALJ's assessment does not warrant remand. A claimant's RFC represents "the most [they] can still do despite [their] limitations." 20 C.F.R. § 416.945(a). In assessing RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). Pursuant to Social Security Ruling ("SSR") 96-8p, an RFC assessment must include an evaluation of a claimant's ability to perform the physical functions listed in 20 C.F.R. § 416.945(b), including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions" that "may reduce [a claimant's] ability to do . . . work." 20 C.F.R. § 416.945(b); *see* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

Only after such an analysis may an ALJ express RFC in terms of the exertional level of work that the ALJ believes the claimant can perform. *See Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021). As *Dowling* explained, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." 986 F.3d at 387 (alteration in original) (citation omitted). Thus, an ALJ must identify evidence that supports their conclusions and build an accurate and logical bridge from that evidence to their conclusions. *See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).

Plaintiff challenges the ALJ's assessment of the sitting requirements of sedentary work and

*Stephanie S. v. Bisignano*
Civil No. 24-1465-CDA
July 30, 2025
Page 4

cites multiple parts of the transcripts that she believes the ALJ failed to properly consider. ECF 12, at 10-14. However, the ALJ assessed the exact evidence Plaintiff cites. The RFC assessment finds support in the weight that the ALJ assigned to the opinions of the prior administrative medical findings. *See* Tr. 30. The ALJ considered the opinion of the consultant at the initial level, Dr. M. Feld, D.O., who opined that Plaintiff's "musculoskeletal impairments and symptoms limited [Plaintiff] to a light work with occasional postural movements except for frequent balancing and climbing ramps and stairs." *Id.* The ALJ also considered the opinion of the consultant at the reconsideration level, Dr. Navjeet Singh, M.D., who opined that Plaintiff's "musculoskeletal impairments and symptoms also limited [Plaintiff] to a limited range of light work involving nonexertional postural and environmental limitations, considering other nonsevere respiratory impairments." *Id.*

The ALJ found the consultants' opinions "partially persuasive as they were based on an incomplete record." *Id.* Specifically, the ALJ found, among other things, that the "[e]vidence received at the hearing level, including the MRIs, EMG/NCS studies, and [Plaintiff's] testimony, support a finding that [Plaintiff] is further restricted to sedentary exertion level work, in light of persistent pain with numbness and tingling in the extremities." *Id.* As such, the ALJ limited Plaintiff to sedentary work and further accounted for her capabilities by incorporating in the RFC that she "cannot kneel, crawl, and climb ladders ropes, and scaffolds[,]" and "limited to performing other postural movements on an occasional basis." Tr. 25.

Elsewhere in the decision, the ALJ acknowledged Plaintiff's testimony "that she has been unable to work due to lower back pain radiating to the legs and feet, bilateral knee pain, and neck pain radiating to the upper extremities with associated weakness." Tr. 26. Plaintiff testified that her back pain "becomes worse with standing and other activity, and that she becomes drawn with Charlie Horses." *Id.* Plaintiff "testified that she could stand five minutes, sit upright 15-20 minutes, lift five pounds, and walk only a few feet." *Id.* Plaintiff also testified that "she sits on the bed or in a chair most of the day and, when sitting on the bed, she typically has her left leg on the bed and right leg off to the side[,]" and that "[w]hen she sits in a chair, her feet are on the floor." *Id.* Plaintiff "stated that she cannot stand for long." *Id.* Further, Plaintiff "testified that she does limited cooking from a seated position and her sister does her laundry." *Id.*

The ALJ examined Plaintiff's physical limitations and the objective evidence and concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 27. The ALJ found that Plaintiff's statements "are inconsistent because treatment for pain and other alleged symptoms has been conservative in nature and has provided good relief of pain, as noted by treating sources." *Id.* Specifically, the ALJ observed that the findings from "repeated musculoskeletal examinations, . . . indicated no more than moderate abnormality and did not substantiate the complaints of pain at 6/10-10/10 levels of severity." *Id.* The ALJ noted that while Plaintiff takes pain medications, "she has required no inpatient hospitalization related to her musculoskeletal impairments." *Id.* Further, Plaintiff's "treating sources acknowledged that her ability to walk was affected by pain, [but] none have noted

*Stephanie S. v. Bisignano*
Civil No. 24-1465-CDA
July 30, 2025
Page 5

the presence of abnormal gait, station or ambulation, or prescribed an assistive device for standing, balancing or walking." *Id.* Moreover, Plaintiff's use of a motorized cart in the grocery store and use of a cane were not prescribed and the use of such devices were not recommended by her treating providers. *Id.*

The ALJ observed that Plaintiff's return to work at several jobs "required a good amount of standing and use of her hands" and is inconsistent with Plaintiff's complaints of disabling knee pain and hand pain. *Id.* The ALJ noted that Plaintiff "admitted to performing a wide range of daily activities that are inconsistent with the degree and intensity of pain and other symptoms she alleges[,]" and that in Plaintiff's Function Reports, she "noted that she is independent in personal care, prepares meals, does basic cleaning, shops in stores, and does make up." *Id.* Plaintiff "admitted that she could concentrate well enough to read, watch television, and handle her finances" despite endorsing pain. *Id.* The ALJ noted that Plaintiff's second June 2022 Function Report reflected "a significant decline in functioning" from the first June 2021 Function Report; however, "orthopedic examinations and pain management records during this period do not reflect a worsening in her condition." *Id.* The ALJ observed that contrary to Plaintiff's testimony that she needed to lie down and rest and of adverse side effects from her medication, "her treating source recommended continued movement and advise against bed rest" and "the progress notes reflect no complaints of adverse side effects." *Id.* The ALJ concluded that "[n]one of [Plaintiff's] medical sources have opined that [Plaintiff] cannot do work within the established residual functional capacity for a period of 12 continuous months or longer." *Id.*

Moreover, the ALJ acknowledged that Plaintiff "reported numbness and tingling in the thighs and feet, especially with sitting" and that she was diagnosed with Chronic Pain Syndrome. Tr. 28. The ALJ observed that "treating sources noted that, while pain limited [Plaintiff's] ability to walk and increased with activity, medications provided some benefit and allowed her to do more, with less pain." *Id.* The ALJ noted that "physical examinations of the spine and affected joints through May 2021 revealed few abnormalities." *Id.* For example, "repeated examinations showed 5/5 strength on testing of the bilateral lower extremities and intact reflexes[,]" decreased sensation only in the lateral left lower extremity, negative straight leg raising, normal range of motion, and moderate pain in the lumbosacral spine with extension which increased with lateral bending in each direction. *Id.* The ALJ observed that Plaintiff "demonstrated the ability to heel and toe walk with good strength" and that "her physician advised her to stay active with home exercise, continue movement, and avoid bed rest." *Id.*

Further, the ALJ acknowledged that treatment records from July 2021 through January 2022 show that Plaintiff "experienced persistent symptoms of back, knee, lower extremity, and hip pain with weakness, numbness and tingling, back cramps and spasms, and neuropathic pain affecting sitting, standing, walking, and bending at the knees[,]" as well as a fall that resulted in persistent knee pain. Tr. 29. The ALJ found however that objective findings "on examination remained stable and the pain was relieved temporarily with injections and anti-inflammatory medications." *Id.* Progress notes from January 2022 through May 2022 show that Plaintiff experienced "more bilateral knee pain, secondary to primary osteoarthritis with occasional buckling and falling and difficulty bending or straightening knee with prolonged inactivity." *Id.*

*Stephanie S. v. Bisignano*
Civil No. 24-1465-CDA
July 30, 2025
Page 6

The ALJ observed, however, that March 8, 2022 x-rays of the bilateral knees "showed no abnormality," physical examinations revealed Plaintiff "maintained normal motor strength 5/5 and normal gait and station[,]" and that Plaintiff "was again advised to continue movement and avoid bed rest." *Id.* The ALJ further acknowledged that Plaintiff complained of "persistent radiating lower back pain" but that examinations "revealed no new signs, symptoms, or evidence of worsening of [Plaintiff's] lumbar disorder[.]" *Id.* For example, a March 8, 2022 repeat MRI scan of the lumbar spine "showed partial sacralization at L5 and degenerative changes in the lower spine, worse at L4-5, and mild left foraminal stenosis" and a May 25, 2022 EMG/NCS study to assess back pain complaints radiating to the left lower extremity "revealed only mild subacute S1 radiculopathy on the right." *Id.* The ALJ observed that "[t]he examining source note[d] that lumbar injections provided as much as 50% relief of pain." *Id.*

The ALJ also acknowledged that Plaintiff's treatment records through March 2023 "reflect persistent complaints of constant, severe lower back, cervical, bilateral hand, and bilateral knee pain with numbness with radiation despite conservative management and interventions, including injections, opioids, muscle relaxers, and anti-inflammatory medications." *Id.* The ALJ observed that Plaintiff's "physician noted that medications continued to provide her with good pain relief without any adverse effects" such as a June 2022 lumbar injection that "was effective in providing 80% pain relief for two weeks." *Id.* Moreover, "[n]eurological examinations remained unremarkable and musculoskeletal findings were stable with no new signs or indications of worsening." Tr. 29-30.

True enough, the ALJ did not individually assess Plaintiff's exertional abilities to perform sedentary work. But the Fourth Circuit has "rejected a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis" and has explained that remand "may be appropriate" when an ALJ "fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F. 3d 632, 636 (4th Cir. 2015). No such issue exists here. Plaintiff identifies no unresolved evidentiary conflicts concerning exertional functions. The ALJ permitted meaningful review by incorporating the RFC assessment of persuasive sources, including the prior administrative medical findings of the medical consultants, into the ALJ's own RFC assessment. *See Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017) (holding that an ALJ adequately supported limitations in the RFC assessment by assigning persuasive value to the opinions of doctors who addressed the limitations in detail); *Onishea v. Barnhart*, 116 F. App'x 1, 2 (5th Cir. 2004) ("The ALJ based his assessment of [the claimant's] RFC, in part, on the state examiner's function-by-function analysis of her exertional limitations. Thus, the ALJ employed the legal standard set forth in . . . SSR 96-8p in [assessing] RFC."); *Audlica D. v. Kijakazi*, No. BAH-22-1046, 2023 WL 1769665, at *5 (D. Md. Feb. 3, 2023) (finding harmless error where the claimant failed to show how the RFC may have changed if the ALJ performed a more in-depth function-by-function analysis). Therefore, the ALJ's failure to explicitly assess Plaintiff's exertional abilities does not warrant remand.

## V.    CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's

*Stephanie S. v. Bisignano*
Civil No. 24-1465-CDA
July 30, 2025
Page 7

judgment is AFFIRMED.  The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.


Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge